Arizaga-Rosa is eligible for a sentence reduction under 18 U.S.C. 3582 C-2 because his 11-C-1-C plea agreement was based on the sentencing guidelines, and the applicable guideline has been lowered by the U.S. Sentencing Commission in a subsequent retroactive amendment. This Court's decision is governed by the Supreme Court decision in Freeman v. United States. Since briefing in this matter, this Court has issued two decisions regarding Freeman. United States v. Leonard, a published decision issued this December, and United States v. McCall, an unpublished decision issued last May. Do you think that we've actually decided which decision, which opinion controls Freeman, whether the plurality or Justice Sotomayor's concurrence is the controlling opinion in that case? No. In United States v. Leonard, it's clear that this Court has not decided that issue. In our opening brief . . . . . . if it is Judge Sotomayor's opinion, then your argument is much more difficult because she has said that it had to be a particular guideline, and here there are two guidelines, so that it doesn't really fit nicely in what she said would be permitted. In Justice Sotomayor's opinion, she said that in order for the reduction to be available, the 11-C-1-C agreement had to be based on the guideline, and that a decision, a sentence within a range, a specific sentence within a range, that's arrived at by a guideline  In this case, Your Honor, the parties carefully calculated the vertical axis of the guidelines, and in the criminal history category, agreed that the guideline, the criminal history category, was anywhere from a 4 to a 6. The appellant has no control over the drafting of the plea agreement. The government, understandably, did not rely . . . . . . regardless of whether in any number of cases, Justice Sotomayor's opinion is determinative. In this case, it is not, because in the Supreme Court decision in Freeman, they went on the second ground, and this comment by Justice Sotomayor refers to the first ground that in that respect, it is dicta. It is not speaking to this, so that everything that she said with respect to that, with respect to whether it would apply here or not, is not holding, and therefore, we can decide for ourselves whether, under these circumstances, it is sufficiently based. Isn't that true? Yes, Your Honor. Her discussion is dicta. One common thread throughout the entire Freeman decision is the result, and that result is that defendants sentenced under an 11C1C agreement are indeed eligible for reduction if the guideline range applicable to them at sentencing has been lowered. That is exactly what this Court found in U.S. v. Leonard. In U.S. v. Leonard, the guideline range found by the District Court turned out to be higher than the one contained in the 11C1C agreement. Ultimately, the District Court did sentence within the agreement of the parties. But here, the government gave up one charge, having filed its 851 information. The agreement expressly acknowledges that they don't know whether the criminal history is a four or a six, and then proceeding through the discussion, although it does reference the guidelines, it says, notwithstanding the above calculations, we are agreeing to 180 months. That strikes me as putting aside the guidelines. It goes through the exercise that is required by our precedent, but it suggests an agreement by the parties that it was reached by some other mechanism. Why is that a sentence that is based on the guidelines? I will answer that in two parts, Your Honor. With respect to the 851 notice, respectfully, we believe that is a red herring. In this matter, Mr. Arzangaroza was set to go to trial on the entire conspiracy charge. It was the government who ultimately offered the resolution to allow him to plead to the cocaine charge, which is, in fact, the only thing he was willing to admit to. In that respect, the 851 notice does nothing to Mr. Arzangaroza's sentence. It changes the mandatory minimum from a five to a ten, but that is still well below the currently amended. With respect to the guideline calculation, I would answer that again in two parts. First, the parties resolved the things they could resolve under the guidelines, specifically the type and quantity of the drug, the nature of this defendant's role in the offense, using the guideline provision to arrive at a two, not a three or a four, acceptance of responsibility, again arriving at a two, not a three. In the end, because the criminal history category, a phrase that is a guideline concept, it is a construct only of the sentencing guidelines, is a matter that simply is, it is what it is. Aren't there many, many, many, many cases from the Northern District of New York which use exactly the same formulation, notwithstanding the above, referring to the guideline calculations, and then come to an agreement where the government has consistently agreed that when the amount of the guidelines based on the amount of the drugs changes, the defendant is entitled to a reduction? Ms. Trevizo. We say to many of them from the Western District in our case, yes, the government has conceded that point in our view, the majority of . . . Ms. Trevizo. Actually, let me, if I could follow up just directly for that. So looking at the plea agreement that was the basis of the opinion in Leonard, as opposed to the notwithstanding language, that plea agreement says consistent with the above calculations, it is the agreement of the parties, suggesting an adoption of the guidelines calculation in a way that this notwithstanding language is in tension with, it seems to me. Don't you agree that that is an important distinction between the two? Ms. Trevizo. I . . . Ms. Trevizo. This is the opening of paragraph 12 in the Leonard agreement from the Western District that was the premise of the opinion you just cited. Ms. Trevizo. My recollection was that it did have the notwithstanding, Your Honor, so I'd certainly defer to the Court who is looking at the actual decision. Ms. Trevizo. I have it before me. Yes. Ms. Trevizo. But I would point to U.S. v. McCall that does, in fact, use the notwithstanding language. Mr. Scalia. Let me try to understand this a bit more. There is certainly a difference between consistent with and notwithstanding, but Judge Kirtle's question was, hasn't the government in many cases conceded that notwithstanding the notwithstanding language, that that can be based on the guideline? Is that my understanding, that in at least some of the districts, the government has been conceding it, but that this is something that that language has been held in any number of cases by district courts to allow a reduction? Ms. Trevizo. Yes, Your Honor, and we cite to many of those cases in our final footnote in our opening brief. Mr. Scalia. So that your argument is, unless we are barred by something in Justice Sotomayor's opinion and Justice Sotomayor's opinion is the determinative one, we can decide whether notwithstanding is used in the Northern District is the correct one or view or the one that is presented today? Ms. Trevizo. Yes, Your Honor. Mr. Scalia. I started off by saying Northern District. I should have said Western, but is this the form language in the Western District of New York, notwithstanding? Ms. Trevizo. Yes, Your Honor, and our footnote cites to Western District of New York, so the final footnote in our opening brief lists the many cases in our district. Mr. Scalia. Do you know what the form language is on other districts in the circuit that use an 11C plea agreement form? Ms. Trevizo. No, Your Honor. In fact, we do sometimes handle appeals out of other districts, and I find there to be a complete difference in the way plea agreements are drafted in other districts, but I can't say that I've ever even seen an 11C1C agreement from another district. To circle back just to Judge Kearney's question regarding the criminal history category, I would also like to point out that the inclusion of the higher criminal history range, I think actually was put in because of the appellate waiver provision at paragraph 18. There the defendant had to agree to waive his right to take a direct appeal within that higher range. Again, a provision of this plea agreement directly referencing the sentencing guidelines. In this case, the higher guideline. So you would say that the appeal waiver also provides a sign that the guidelines were the basis for the agreement? Yes. Correct. Thank you very much. We'll hear from the government. May it please the court, my name is Joseph Karashevsky. I represent the United Nations on this appeal. The district court's denial of the 3582C motion in this case was not erroneous. The district court expressly said in denying the 3582C motion, this is the same judge who imposed the original sentence, that Arizaga Rosa was ineligible for sentence reduction because he was expressly sentenced based on a sentencing range. Because he was not expressly sentenced on a sentencing range that had been lowered by amendments to the guidelines. And in particularly descriptive language, which the judge used in denying the motion for reconsideration. And taking an even closer look at what happened at the original sentencing. The judge said that the parties, applying Justice Sotomayor's concurrence, that the parties agreed to this sentence despite the guidelines, not based on them. And that's- Are you relying on the notwithstanding language in the plea agreement? We are relying on the notwithstanding language, but not solely on the notwithstanding language. Let's just deal with that language then. How do you deal with all of the other cases from the western district that use that exact language? And nevertheless grant reductions of sentence to defendants? Because those cases, I have not looked at all of those under a microscope. But this case is different. This case involves a situation where the parties were expressly uncertain about what the guidelines range was going to be. But the sentence that they agreed upon was plainly within one of those guideline ranges. Right, it was within one of those guideline ranges. That does not signal definitively that the sentence that the parties agreed upon was based upon the guidelines. Why is it that the government spends such resources on this case with this long history of all of these other cases using exactly the same language on which the government could have relied, notwithstanding the above. How is it that this defendant is somehow singled out by the western district? Because the situation is different in this case, your honor. In many of those cases, and I'm familiar with generally- But the difference can be only one of two. That here, there were two possible guidelines. And the question of whether that makes a difference or not is a question of law for us to deal with and is not dealt with adequately by Justice Sotomayor. Because when she says particular guideline, that is clearly dicta, because it had nothing to do with a particular case. So the question of whether the choice between one guideline and another means that with notwithstanding language, it moves outside either guideline is a question of law for us to decide. The other point, which your beginning argument seemed to make, is what was in Judge Scretny's mind. And it may well be that Judge Scretny thought that this was not based on the guidelines. But whether he is correct in that or not is not for him to say, it's on whether under the law that is based or not. He then can give the same sentence. There's no question that if we think that this is possible, it goes back to Judge Scretny and he can give the same sentence 17 times over. But what was in his mind doesn't distinguish this case from the others. So I come back to Judge Kudlow, what makes this case different? Well, what makes it different, and respectfully, the judge does have to say in ruling on the 3582C motion, whether or not it was based on the guidelines or based on the 11C1C agreement. Certainly, it's up to this court to make a determination as to whether he's correct or not. But he does need to say that, and he did say that pretty specifically in this case. In terms of why it is different, the reason it is different, and Judge, I agree that there are plenty of cases where with that notwithstanding the calculations language that we have conceded, okay, this was based on the guidelines. We agreed to a sentencing range, and like in Leonard, agreed that a sentence within that sentencing range was the appropriate sentence in the case under 11C1C. That's pretty, that's more than what we have in this case. Why didn't you do that here? You agreed upon a sentence which was within one of the two guideline sentencing ranges, the one that provided for the lower sentence, and you agreed that that was going to be the sentence. The guideline sentencing range was then reduced. Because we didn't know what the guidelines range was going to be, and the parties expressly said, we don't know. You agreed to a sentence within the lower of the two guideline sentencing ranges, which was then reduced. Both would have been reduced. Right, and we do concede in this case that the applicable range has been lowered, and Leonard discusses both the based on language and the applicable language, and in this case, sure, the applicable range has been lowered, but the sentence was not based on. Let me ask you a broader question. All this does, ultimately, if we decide against you, is to send it back to the same judge to decide whether that judge wants to put a lower sentence or not. Why shouldn't, in that context, the statute, or the change in the guideline, be read broadly? That is, of course, if it is clearly not based on the guidelines, if it cannot be, then that's it. There is no authority. But where there is any doubt, why shouldn't in a situation where all this does is permit the same judge to consider something, which before that judge was not permitted to consider, why isn't that the appropriate, sensible thing to do? Well, it... I mean, just in terms of common sense, not of how one reads things in a situation like this. Because the district court in this case was quite definitive in ruling that this was not... It was definitive on his view of what the law was, not on his view of what the sentence should be if the law allows him to make it lower. And that's a very different issue. But if the parties agreed... And I think we're circling back around, Your Honor. If the parties reached this agreement and reached the agreed-upon sentence, not based on the guidelines... Notwithstanding. Yes, notwithstanding what the guidelines... And yes, our plea agreements do calculate the guidelines. That's to assist the district court. The district court has the obligation under the statute to consider the guidelines. Counselor, Judge Gretny at the sentencing, when he was addressing the defendant, explained that there were negotiations going on in Washington to lower the sentence that would apply to this defendant. And perhaps, eventually, he would be able to get the benefit of that reduction. Wasn't Judge Gretny talking exactly about the reduction in the guideline range that's being discussed here? And isn't it somehow unfair for Judge Gretny to hold out to the defendant the possibility that the guidelines would be reduced and applied retroactively, and then, when the issue comes up, said, I can't do it? I don't think so, Your Honor. And for this reason, that discussion at the original sentencing was brought up because the defense attorney, zealously advocating for his client, said, look, this is on the horizon. Why don't you just give it to him? And the judge said, no, I can't. There has to be an agreement. I realize that my opponent has said what that was referring to was what there was the practice when the amendments were on the horizon of us just agreeing, hey, look, we'll agree to the lower sentence. The parties agreeing beforehand, we'll agree to the reduction now, so you don't have to make a 3582C motion later. And it was that. But also, in this case, there was no budging. It's not that we didn't- But didn't Judge Gretny, I mean, he discusses Justice Sotomayor's view and says that he feels bound by that because it's the narrower opinion between that and the plurality. And one might disagree about whether it's narrower or not and whether they're actually inconsistent in some important respects. But it seems to me, on reading his opinion, that he felt bound by applying Justice Sotomayor's approach to find that this was not based on, and therefore, he was not free to reduce the sentence. We might disagree with him about that, or we might apply a different understanding of what Justice Sotomayor wrote. And in that case, it seems to me that it's quite possible that if he were to find the kind of eligibility that's required for a reduction, that he might be open to that. And it's up to this court to make that determination. Certainly, if you have to, if you have to decide which of those two decisions, whether it's the plurality or the concurrence that is controlling in Freeman, then certainly you left that open. Let me ask you, would you concede that if we were to find that it is the plurality that is controlling, I'm very skeptical of whether we can make such a finding, but if we were to find that the plurality were controlling, that then a reduction here would be appropriate, because the plurality essentially says if it is influenced by the guidelines, then this was influenced by the guidelines. So would you concede that, or do you not concede that? No, and because of the reasons that I put in my response to counsel's 28-J letter, in looking at Leonard, and this court, the panel in Leonard of this court said, we are looking to what the district court did, and it was based on the guidelines because the judge spent seven transcript pages talking about why it was going to vary from the applicable guideline in the case. This case, you don't have that. You have Judge Scretany in this case basically saying, all right, I'll apply the agreement, the 180 months. Yes, he calculates the guideline. You don't think that in this case, I don't think Leonard has that much to do with it, but you don't think that in this case, the guidelines influenced the sentence? That's what the plurality says is enough. Now, I'm skeptical of whether that is enough given Justice Sotomayor's concurring opinion, whether it covers this case or not. I'm skeptical of whether it is, but if it is just a question of influence, are you really going to tell us that the guidelines didn't influence this? Well, the judge is required, the district judge, as this court knows, is required to consider the guidelines, and you have to- To be influenced. Well, then every case is going, then there will never be- Well, if it were the case that the plurality was dominant, but that hasn't been held. My mind was on a contrary to fact, if you want, hypothetical with respect to the plurality. Now, I think this is a case where the plurality, we don't need to say dominates, but maybe Justice Sotomayor's statements don't either because it's dicta, and then we have to decide what happens in this case. That's correct, but I think if you're going to say that the plurality is to be read to say that it influenced the decision at all, that the guidelines influenced the decision at all, then I think you're going to have a situation where there's going to be no 11C1C case, or very few 11C1C cases that aren't going to be- But we have not in fact, but I was just giving you a hypothetical. I wasn't saying, I agree with you, that would be the consequence, and that may be a reason why the plurality doesn't govern, but that's- But there has to be something. I want to circle back before you sit down to Judge Cuddle's question about, just to confirm that this is the form, the notwithstanding language, this is the form template that is used in the Western District, right? And so in interpreting this, our reading of it may have broad consequences, is that right? Yes, but I'm sorry. Why do you consider it such a parade of horribles to say that in every 11C1C agreement, it would be open to the reduction under the guidelines? Because you could still not reduce a sentence below the guideline range in the amended guidelines, and it's still up to the discretion of the district court judge whether to grant the reduction. The only thing you've done is to give to the district court judge the discretion in view of the amendment to the guidelines to lower a sentence. And the number of cases that are going to be prevented by a constrictive ruling of an 11C1C agreement are exceedingly small. They appear to come up from the Western District of New York. In the few cases where the government chooses to resist the reduction of a sentence because a trial judge didn't think that the judge had the power to reduce the sentence, and they end up taking a lot of the judge's time and this court's time, to what end? Why is that such a parade of horribles? Judge, I just had a discussion with Ms. Mariano before we started getting up here, and I basically said I thought we were finished with these. But I don't think that it would be a parade of horribles. I don't think it would be that horrible. However, you have the statute, 3582C, which says that the sentence has to be based on the guidelines. If you apply the Freeman Plurality's language that says if it influences the sentence, it is based on the guidelines, then you don't even need that language in 3582C. Why do you even have to make a determination whether the sentence is based on the guidelines? That language must mean something. Congress put it there. So if you don't, if you apply what the plurality says and say, look, any sentence where the guidelines influence the sentence is based on the guidelines, then you don't need the words based on the guidelines because the judge has to consider the guidelines in every single case. You're arguing that the plurality is wrong. That's what you're arguing, isn't it? Well, I do think Justice Sotomayor's concurrence is narrower. So I think that that's the proper disposition of that issue as to which of those control. Where her opinion is holding rather than dicta. And so as to one of the two ways in which she says, which is the one that she applied in Freeman, it is holding. But as to the other way that she speculates about what might be based on in some other way, that wasn't necessary to her decision. And so we can say we don't really know what Justice Sotomayor would have done in a case where you have two guidelines, in a case where there then was a discussion and notwithstanding. And if we say we don't know what she did, we don't need to go as far as the plurality. But we can say, why bother? Thank you very much. I think we have your arguments. Ms. Mariano, you have three minutes for rebuttal. Quickly. With respect to the plurality, under Leonard, you look to the district court's analysis. And here, the PSR actually denied appellant acceptance of responsibility and he objected to that guideline. Judge Scretney resolved that guideline objection in his favor and ultimately arrived at a very specific guideline in criminal history category four. With respect to Justice Sotomayor's concurrence, although dicta, I would submit that the dicta actually explains her position. Specifically, what Justice Sotomayor held of relevance here, as long as the sentence range is evident from the agreement itself, for purposes of 3582C2, the term of imprisonment imposed by the court in accordance with that agreement is based on the range. Evident does not dictate the specific criminal history category. And in fact, in footnote, I believe 12, she talks about how a guideline range then cut in half by the party's agreement would still be based on the guidelines. But doesn't she use the word calls for? Somewhere in her discussion. She does, Your Honor. But the entire quote that I rely on, and it is quoted and dented in our opening brief, is that a plea agreement might provide for a specific term of imprisonment, such as a number of months, but also make clear that the basis for the specific term is a guideline sentencing range applicable to the offense to which the defendant pled guilty. As long as the sentencing range is evident from the agreement itself, for purposes of 3582C2, the term of imprisonment imposed by the court in accordance with the agreement is based on the range. I think that language will fully cover the circumstance we have here. My esteemed colleague has said that Judge Scretany has said it himself that this was not based on the guidelines. And with respect to Judge Scretany, for whom I have great respect, he also said that in United States v. McCall, and although an unpublished decision, this court reversed. I note that of specifics here because, in fact, Judge Scretany relied on his decision in McCall in denying Mr. Arizanger's motion for reconsideration at joint appendix, page 241. You'll see the judge relied on a decision reversed by this court. And finally, Judge Carney, I don't know if Your Honor has the actual plea agreement from Leonard or if you're citing the case. No, I had the actual plea agreement from Leonard. I pulled that. Thank you, Your Honor. Thank you very much. Thank you. We have the arguments. Well argued. We'll reserve decision. Well argued on both sides. Thank you.